Raymond E. Aldrich, Jr., J.
Pursuant to the provisions of GPL 330.20, the Commissioner of Mental Hygiene applies for the discharge or release on condition without danger to himself or others of the defendant John Del Guidice, who is now a patient at the Mid-Hudson Psychiatric Center, New Hampton, New York.
An adequate appreciation of the reasons for the decision of this court requires a background recitation of the significant factual sequence of events leading up to and subsequent to the indictment of the defendant on April 27, 1971, for the crime of manslaughter in the first degree, committed while he was a patient at the Hudson River State Hospital when he hit an attendant on the head with a piece of lumber as the attendant sought to have him return to the ward.
The record indicates that the defendant was admitted to the Hudson River State Hospital on two occasions, the first tinje on April 15, 1965 for a stay of about three months as a result of a nervous breakdown, and the second time on March 9, 1971 on transfer from Grasslands Hospital, Valhalla, New York; that on March 29,1971 the defendant committed the acts resulting in the death of the attendant; that on the same day, another Judge of this court appointed two examining physicians, one of whom was Dr. Max Dahl, to examine the defendant as to his mental condition; that the examining physicians found that defendant’s presence in a hospital of the Department of Mental Hygiene was dangerous to the safety of other patients, the officers, employees, and the community, whereupon he was certified on the same day to Matteawan State Hospital; that pursuant to an order, two court-appointed psychiatrists examined the defendant at Matteawan State Hospital on September 23, 1971 and found him able to stand trial; however, upon motion of the District Attorney, a plenary hearing was held on November 22,1971, pursuant to CPL article 730 to determine whether or not the defendant was an incapacitated person within the mean *295 ing of the law; that at this hearing the defendant was represented by private counsel; that the testimony at the hearing convinced this court that the defendant did not lack capacity to understand the proceedings or assist in his own defense, and accordingly, the criminal action was reactivated; that on December 17, 1971, the defendant was released on surety bond of $20,000; that after being released on bail for almost a year, the defendant went on trial on November 28, 1972, and was acquitted by reason of mental disease or defect (CPL 330.10) on December 19,1972; that after the verdict, the defendant was remanded to the custody of the Dutchess County Sheriff, and thereafter on January 15,1973 was delivered to the Mid-Hudson Psychiatric Center, where he is now a patient; that within a month, on February 16,1973, the Director of the Center recommended his discharge, and on February 22, 1973, the Commissioner of Mental Hygiene applied to this court for the discharge or release on condition without danger to himself or others of the defendant; that the court then appointed two qualified psychiatrists ('CPL 330.20, subd. 2), Dr. Arnold D. Bueove and Dr. Werner M. Cohn, who had no previous involvement in any proceeding relating to the defendant, to examine Mm as to Ms mental condition, who then did do so, and reported their findings ; that since the court was not fully satisfied by the findings made in the reports, a civil hearing was held before the court without a jury, since the defendant had declined a jury trial, to inquire more in depth as to whether or not the recommendation of the Commissioner of Mental Hygiene should be approved.
Four psychiatrists testified at the hearing; the two appointed by the court and two called by the defendant.
Dr. Bueove testified he examined the defendant on April 7, 1973 at the center after reviewing his medical records; he found defendant coherent and rational, his speech clear and relevant; he testified that a diagnosis of schizophrenia paranoid would seem to be a reasonably accurate one, concluding that defendant was either in a state of remission or he was able to conceal Ms symptoms; he found no evidence of hallucinations or delusions or that defendant was psychotic at the time, and no evidence that the defendant presented a danger to himself, however, the doctor felt he might pose a danger to the community if he is given another provocation, and then he added he did not know whether defendant would or would not have a relapse, stating most significantly that such a relapse may never occur in any event; he opined that further hospitalization would not benefit *296 the defendant but only serve a detainment purpose for the protection of the community.
Dr. Cohn testified his examination of defendant on April 7, 1973, accompanied by Dr. Bucove, took about an hour; he diagnosed defendant as suffering from a mental condition known as schizophrenia paranoid, in state of remission; in his opinion defendant did not present a danger to himself or others, or a threat to the community at the time of his examination or immediately thereafter, however, a reoccurrence could happen with minimal stress precipitation in two or three days, emphasizing that the degree of probability of reoccurrence or the time thereof could not be assessed; the doctor added that observation of the defendant once a week would be an assurance of detecting an approaching relapse under stresses of normal living.
The first witness for the defendant was Dr. Howard P. Smoller, a psychiatrist, a staff member of the Mid-Hudson Psychiatric Center, and an employee of the Department of Mental Hygiene, who had personally attended the defendant since his admission; he affirmed the defendant had never been given any medication at the center, or indicated any antisocial conduct, further he is rational, coherent, not delusional or hallucinating, and demonstrates no primary or secondary overt schizophrenic signs; that the defendant was presented before a staffing committee of the center, consisting of three psychiatrists and a psychologist, and their unanimous decision was that he did not pose a threat to himself or the community as he was not psychotic now; that if the defendant was released he would not need any type of therapy.
Dr. Max Dahl, a psychiatrist who was the Assistant Director at Hudson River State Hospital until his retirement in 1970, and one of the examining doctors who certified the defendant to Matteawan on the day he killed the attendant, testified that while the defendant has been suffering from the mental condition diagnosed as schizophrenia paranoid, he is now in a condition of remission, not presenting a danger to himself or others, exhibiting no manifestations of psychosis.
From the preponderance of the medical evidence, this court is satisfied that the defendant may be released on condition without danger to himself or others. He has not been under any medication since his release from Matteawan over a year and a half ago, he was out on bail for a year prior to his trial, he withstood the emotional stresses of both an extended trial and preliminary hearings, and he has not exhibited any misbehavior actions or any hostile, aggressive inclinations during this *297 extended period of time. We must recognize that literally thousands of people suffering from the same mental disorder as the defendant are moving about freely in our society, gainfully employed, functioning socially, and participating in the activities of daily living, all without danger to themselves or their neighbors.
The science of psychiatry is at most an educated guess as to the certainty of human behavior, which cannot be predicted with any absoluteness. The relapse of a person suffering from the mental condition characterized as schizophrenia paranoid can only be predicted statistically, and even this is of doubtful value. The circumstances, or stresses, which will precipitate an acute psychotic episode in one person at one time may be emotionally resistible by that individual at another time. As to this defendant, not one of the psychiatrists believe he is a danger to himself, and all but Dr. Bucove believed he was not a danger to others; however, even this doctor stated that a relapse may never occur. The medical evidence predominates toward the release of the defendant, and the court is satisfied that he should be released. To hold otherwise, and retain the defendant in the center would be a punitive decision, or one based upon fear of misbehavior in the unpredictable future, speculative and conjectural without sufficient medical basis.
The Legislature has given the court the power to impose reasonable conditions upon the release of this defendant, and therefore in the public interest, and in view of the length of time defendant has been at the center, and to afford a minimum of supervision consistent with the public good, and afford an opportunity to be periodically examined to determine a change should one occur in his mental condition, it is ordered that said John Del Guidice be released from the Mid-Hudson Psychiatric Center upon the following conditions: That John Del Guidice report to the Rockland Community Mental Health Clinic, 87 Neperhan Avenue, Yonkers, New York, once a week for aftercare and follow up observation for a period of five years from the date of this order; and it is further
Ordered that the State Commissioner of Mental Hygiene shall submit to this court periodic reports on the mental status of said John Del Guidice; such reports shall be submitted at least every six months, except that if said John Del Guidice shall fail to appear for his weekly examination and/or therapy without good cause, or if said John Del Guidice’s mental condition shall deteriorate to the point that further hospitalization is *298 recommended, such facts shall be reported to this court forthwith; and it is further
Ordered, that said John Del Guidice is granted leave of this court to return to the country of his birth upon giving notice to this court and the Rockland Community Mental Health Clinic, 87 Neperhan Avenue, Yonkers, New York, upon the condition, however, that should he return to the State of New York at any time within five years of the date of this order, he shall forthwith notify this court and Rockland Community Mental Health Clinic, 87 Neperhan Avenue, Yonkers, New York, and immediately resume his weekly visits aforesaid, and it is further
Ordered that the State Commissioner of Mental Hygiene make Suitable provision for the aftercare and follow up observation period by the Mental Hygiene Department of said John Del Guidice as heretofore ordered.
So ordered, with formal order, if required, to be submitted on notice.